Clare L. Reading and James L. Reading
c/o 2425 East Fox Street
Mesa, Arizona [85213]
(480) 964-0199

Plaintiffs, in *Pro Se*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Clare L. Reading and James L. Reading,  )
                           )
      Plaintiffs,             )
                           )
  v.                         )
                           )
UNITED STATES *aka*, UNITED STATES  )
OF AMERICA, a Federal Corporation, ANN )
TAYLOR, PAUL CHASE, CINDY MASON )
and BOB CAREY,              )
                           )
          Defendants.      )
_____)

Case No. 06-1873 (RMU)

**PLAINTIFFS' MOTION FOR
RECONSIDERATION AND
WITHDRAWAL OF ORDER**

COMES NOW Clare L. Reading and James L. Reading, Plaintiffs, proceeding on their own behalf and filing this motion for reconsideration pursuant to Fed. R. Civ. P. Rule 60(b)(1). "If a party demonstrates due diligence it may be relieved of the consequences of his own mistake." See *Union Pacific R.R. v. Progress Rail Services Corp.*, 256 F.3d 781, 782-783 (8th Cir. 2001). "The term "mistake" in Rule 60(b)(1) includes not only mistakes made by litigants, but also mistakes made by the court. See *In re 310 Assocs.*, 346 F.3d 31, 34-35 (2d Cir. 2003).

Plaintiffs include evidence sufficient to establish that due diligence has been exercised once the Court takes into consideration the entire record. ***". . . the court must consider the entire record in the action, not just those pieces of evidence that have been singled out for attention by the parties***." See *Clinkscales v. Chevron USA, Inc.* 831 F.2d 1565, 1570 (11th Cir. 1987). As the

Court's record reflects, Plaintiffs have made more that a "good faith" effort to comply with the Federal Rules, and petitions this Court in the interest of justice and due process to reconsider the present Order. The Plaintiffs do not in any way infer that this Court has erred, but merely that an unintended oversight exists by the Court and such oversight warrants review and correction – as no man is without error. "Due process cannot be satisfied when the state provides a hearing at which the judge is not really listening or before which the decision has already been made. (*see United States v. Cross,* 128 F.3d 145, n. 2 (3rd Cir. 1997).

The Plaintiffs note that a dismissal predicated on an technical procedural rule or oversight has not prejudiced the Defendants, but rather lends confidence that the Plaintiffs' Complaint at bar has great merit, as the Defendants would much rather forego litigating these facts and law, knowing the Plaintiffs are most likely to prevail. Therefore, if forced by this Court to do so, the Plaintiffs will continue to 'burn the midnight oil' (til' death do us part) and will have their day in court to recover from the harm and injury caused by the Defendants – an inescapable fact. "The right to sue and defend in the courts is the alternative of force.  In an organized society it is the right conservative of all other rights, and lies at the foundation of orderly government." *Chambers v. Baltimore & Ohio Railroad*, 207 U.S. 148.

Upon the Court's thorough review of the case-in-chief, this Court will determine that as a matter of fact and law, the Plaintiffs have effectively established jurisdiction, leaving the Defendants compelled to answer the Verified Complaint. In support of this response, Plaintiffs refer the Court to the memorandum of points and authorities included herewith. A proposed Order is also submitted by Plaintiffs.

**A**.
## MEMORANDOM OF LAW AND BRIEF IN SUPPORT

**I**.
### Plaintiffs Are Not Be Held To The Standards Of A Bar Attorney

Plaintiffs Clare L. Reading and James L. Reading are unschooled in law and, therefore, are waived from being held to the standards of a bar attorney as stated in <u>Haines</u>: "*however inartfully plead, [pro se] must be held to a less stringent standard than formal pleadings drafted by bar-admitted attorneys and can only be dismissed for failure to state a claim if it appears beyond a doubt that the pro se litigants can prove no set of facts in support of [his] claims which would entitle him to relief*." <u>Haines v. Kerner</u>, 404 U.S. 519-521. Plaintiffs request this Court to take judicial notice of <u>Haines</u>, as such doctrines are applicable in this instant case – as Plaintiffs have made every good faith effort to comply with this Court's decorum and will continue to do so.

**II**.
### The United States Supreme Court Established The Doctrine Of Substance Over Form Regarding The Filing Of A Complaint

The Plaintiffs filed their Verified Complaint in *pro se*, and, as cited in <u>Haines</u> supra, are not to be held to the high standards of a bar attorney. The substance of the Plaintiffs' Complaint has effectively established the elements necessary to cede this Court's jurisdiction. The United States Supreme Court stated in <u>Frank Lyon Co. v. United States</u>, *435 U.S. 561* (1978) *98 S.Ct. 1291,* "In applying this doctrine of substance over form, the Court has looked to the objective economic realities of a transaction rather than to the particular form the parties employed. *The Court has never regarded 'the simple expedient of drawing up papers,'*" <u>Commissioner</u> v. <u>Tower</u>, 327 U.S. 280, 291 (1946), *as controlling for tax purposes when the objective economic realities are to the contrary. "In the field of taxation, administrators of the laws, and the courts, are concerned with substance and realities, and formal written documents are not rigidly binding*." <u>Helvering</u> v.

_Lazarus & Co._, 308 U.S., at 255. See also _Commissioner_ v. _P. G. Lake, Inc._, 356 U.S. 260, 266-267 (1958); _Commissioner_ v. _Court Holding Co._, 324 U.S. 331, 334 (1945). **_"Nor is the parties' desire to achieve a particular tax result necessarily relevant_**." _Commissioner_ v. _Duberstein_, 363 U.S. 278, 286 (1960).

The Plaintiffs, prior to filing their complaint, went though many pains and penalties in a good faith attempt to properly cite the causes of action and requisite jurisdictional grounds to foreclose on the type of grandizing the Defendants would employ in an attempt to get this case dismissed. Still, Plaintiffs are challenged with reestablishing what is already well established on the Court's record.

### III.
### Statement of the Case

1.     The Plaintiffs filed their Verified Complaint pursuant to an illegal seizure and taking of personal property on November 1, 2006, and Defendants were duly served with the Summons and Complaint on November 13, 2006.

2.     On November 27, 2006, the Court entered a docket entry giving the Defendants 60 days or until January 12, 2007 to answer the Plaintiffs' Verified Compliant (see Docket #2).

3.     The Defendants, in their routine display of arrogance and disrespect towards _pro se_ litigants and this Court, failed to answer the Verified Complaint, pursuant to the Federal Rules of Civil Procedure, which caused the Plaintiffs to file a Motion and Affidavit for Entry of Default, filed and served on the Defendants on February 9, 2007 as indicated at Docket #6.

4.     In response, the Clerk of this Court entered a Default against Defendants on February 16, 2007, and after the Default was entered, the Defendants (34 days beyond the time to answer or defend) filed their Motion to Dismiss for lack of jurisdiction on various grounds moving for relief from the Entry of Default on February 22, 2007 [see Docket #8].

5.      The Plaintiffs, having received an entry of default by the Clerk of the Court against the Defendants, did not answer the Defendants' Motion to Dismiss because Plaintiffs relied on LcvR 7(b); Fed. R. Civ. P. 6(a), that the Default must first be cured before the Motion to Dismiss can effectively cede the court's jurisdiction – making the Motion to Dismiss moot.

6.      The Motion to Vacate the Entry of Default was filed by the Defendants on February 22, 2007 [Dkt#8], for which the Plaintiffs were never given an opportunity to respond as accorded by LcvR 7(b); Fed. R. Civ. P. 6(a), and deprived Plaintiffs of the due process right to respond to the motion.

**IV.**
**The Court Failed To Issue Strickland Order Informing**
**Plaintiffs Of The Consequence Of Any Failure To Respond**

7.      The Defendants filed their Motion to Dismiss February 16, 2007 [Dkt. #8]. In *Fox v. Strickland*, 837 F.2d 507 (D.C. Cir. 1988), the D.C. Circuit held that a district court must take pains to advise a *pro se* party of the consequences of failing to respond to a dispositive motion. "That the notice should include an explanation that the failure to respond . . . may result in the district court granting the motion and dismissing the case." *Id.* at 509.

8.      In this case, an error of law may have been unintentionally committed by the Plaintiffs, but such error is not without cure. The Plaintiffs, in receipt of an entry of default by the Clerk of the Court on February 16, 2007 at [Dkt.#6], on the same day the Defendants filed their Motion to Dismiss, proceeded with the understanding that the Defendants would be required to file a new motion to cure the Entry of Default, making their Motion to Dismiss moot and without the Court's jurisdiction.

9.    Thus, the Plaintiffs would have to answer their motion in compliance with LcvR 7(b), Fed. R. Civ. P. 6(a); considering the Defendants' Motion to Vacate Default was filed on February 22, 2007 – giving Plaintiffs until March 5, 2007 to answer.

10.    The Plaintiffs in good faith have taken every step imaginable to interpret the complex plethora of Federal Rules of Civil and Judicial Procedure laced with conflicting case citations to effectively discern and apply these rules correctly. Plaintiffs, acting *pro se*, are entitled to a *Strickland* Order, giving Plaintiffs an opportunity to cure any unknown oversight on their part prior to this Court's entry of judgment.

**V.**
**Service Was Made By The Civil Process Clerk On The United States**

11.    The Court asserts that Plaintiffs violated Fed. R. Civ.P. 4(c)(2), asserting that the Plaintiff Clare L. Reading, a party named in the action, caused the action to be served. As the Court's docket reflects [at Dkt.#2], the Summons and Complaint were properly executed on all parties and they were directed to answer by January 12, 2007, which did not come to fruition.

12.    The Plaintiffs also caused Service of Process to effectuate on the United States Defendant via Fed. R. Civ.P. Rules 4(i)(1)(A) and 4(i)(2)(A), sending a copy of the summons and complaint by certified mail addressed to the Civil Process Clerk at the office of the United States attorney, the Attorney General of the United States at Washington, District of Columbia. "Rule 4(i) provides the method for service on the United States, or its agencies, officers or corporations." See *McMaster v. United States*, 260 F.3d 814, 817-818 (7th Cir 2001).

13.    The named United States employee Defendants, ANN TAYLOR, PAUL CHASE, CINDY MASON and BOB CAREY were sued and named in their official capacity and not their individual capacity (this is not a Bivens action). "Due to the rather stringent requirements of the rule, Rule 4(i)(3) instructs the court to allow a reasonable time to cure the failure to serve multiple officers if

the Plaintiff has successfully served the U.S. attorney or the Attorney General.  See *Flory v. United States*, 260, F.3d 24, 25-26 (5th Cir. 1996).

14.     The literal reading of Fed. R. Civ.P. 4(c)(2) states in pertinent part: "***Service may be effected by any person who is not a party and who is at least 18 years of age.***" The term *may* appear to give *pro se* Plaintiffs, a man and woman of average intelligence, the discretion to effectuate service by a [p]erson who is not a party or by some other means. See *Sheppard v. Riverview Nursing Center*, INC., *88 F.3d 1332* (4th Cir. 1996). "The word "may" means just what it says . . . *Persinger v. Islamic Republic of Iran*, 729 F.2d 835, 843 (D.C. Cir.) "When Congress uses explicit language in one part of a statute . . . and then uses different language in another part of the same statute, a strong inference arises that the two provisions do not mean the same thing." cert. denied, 469 U.S. 881 (1984).

15.     With that understanding, Plaintiffs effectuated service by Certified Mail via the Post Master General who made the actual service, not the Plaintiffs. The reading of the rule states "Service may be . . . by any person who is not a party . . ."  The court held in *Chairez v. United States*, 355 F.3d 1099 (7th Cir. 2004) Service by certified mail has long been considered an acceptable means to provide notice. See *Mennonite Bd. of Missions v. Adams,* 462 U.S. 791, 796 n. 3, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983) (citing *Hess v. Pawloski,* 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091 (1927); *Nibagwire v. Gonsales*, 04-2254 (4th Cir. 2006). "Under a service by certified mail scheme, *Grijalva* held that a "strong presumption" of delivery attaches. *Grijalva,* 21 I. & N. Dec. at 37. "The strong presumption of delivery is justified for certified mail because of the extra assurances of effective delivery provided by the U.S. Postal Service. When certified mail is used, the Postal Service's delivery efforts are documented: there is a return receipt or written proof of attempted delivery and notification to the addressee of certified mail."

16.     The Plaintiffs in this instant case merely prepared the Summons and Complaint, packaged the documents, and presented the papers for service and delivery to be effectuated by an authorized officer of the Post Master General.   There is no evidence that the Defendants did not recieve delivery notice from a third party, nor have the Defendants established how they are prejudiced by the Plaintiffs  - having service be effectuated by the Post Master.

17.     To the degree this Court determines service of process has not been properly effectuated on the named officer employees of the United States Defendant, the proper remedy would be to dismiss only those parties – not the entire Verified Complaint, as this court maintains jurisdiction over the United States Defendant regardless. See *McMasters* at 814.

**VI.**
**Plaintiffs Were Not Allowed To Exercise Their Due Process**
**Rights To Answer The Defendants' Motion For Default.**

18.     The Motion to Vacate the Entry of Default was filed by the Defendants on February 22, 2007 [Dkt#8], to which the Plaintiffs were never given an opportunity to respond as accorded by LcvR 7(b); Fed. R. Civ. P. 6(a), depriving Plaintiffs of the due process right to respond.   "Parties whose rights are to be effected are entitled to be heard, and in order that they may enjoy that right, they must first be notified." See *Baldwin v. Hale*, 68 U.S. (1 Wall.) 223, 17 L. Ed. 531. *Fuentes v. Shevin*, 407 U.S. 67, 80, 92 S. Ct. 1983, 32 L. Ed. 2d 556 (1972).

19.     Although The Court has taken a position to cure the Default without using the standard due process mechanisms accorded by LcvR 7(b); Fed. R. Civ. P. 6(a), the Defendants have not themselves defended the claim. ". . . an entry of default may be made when a defendant has "failed to plead or otherwise defend" against a claim for affirmative relief. Thus even if the defendant has filed an answer or pleaded in response to the claim, the defendant may nevertheless be determined

to be in default if the defendant failed to "otherwise defend" the claim." See *United States v. $23,000 in U.S. Currency*, 356 F.3d 157, 163 (1st Cir. 2004).

20.    In this instant case, the Defendants' Counsel, a United States attorney, was served (therein the United States was served) the Verified Complaint pursuant to Rule 4(i)(3) and well knew of its existence, yet responded 34 days beyond the time to answer and was not admonished, punished or sanctioned by the Court for wasting its valuable time. Yet, the Plaintiffs' good faith interpretation of the entry of default by the Clerk of the court (which resulted in Plaintiffs belief that no response was necessary *in re* the motion to dismiss)  – was met with an immediate Order from the court granting the Defendants motion to dismiss and alleging the Plaintiffs failed to cede the court's jurisdiction. "***Although a party conniving with a judge to predetermine the outcome of a judicial proceeding may deal with him in his 'judicial capacity,' the other parties expectation of judicial impartiality is actively frustrated by the scheme. It is this antithesis of the 'principled and fearless decision-making' that judicial immunity exists to protect***." *Rankin v. Howard*. 633 F.2d 84 (9th Cir. 1980) cert. Denied, 451 U.S.  939, 101 S. Ct. 2020,  (1981); *Pierson v. Ray*, 386 U.S. 547, 544, 87 S.Ct. 1213 (1976) and *Gregory v. Thompson*, 500 F.2d 59 (9th Cir. 1974).

21.    The Plaintiffs have been prejudiced in this instant case when we consider that: (1) Counsel for the Defendants, a bar attorney, intentionally failed to respond timely (34 days past the 60 days according to rule) to Plaintiffs' Verified Complaint, (2) the Court cured the Defendants' Default, never giving Plaintiffs an opportunity to respond, (3) and issued an Order granting the Defendants' Motion to Dismiss prior to issuing Plaintiffs a *Strickland* Order.

22.    For these and other reasons, this Court should reconsider its current Order granting the Defendants' motion and extend equal protection of the law and due process to Plaintiffs as justice commands. "Due process cannot be satisfied when the state provides a hearing at which the judge

is not really listening or before which the decision has already been made." (see *United States v. Cross*, 128 F.3d 145, n. 2 (3rd Cir. 1997).

## VII.
### Plaintiffs Cite Jurisdiction On Multiple Grounds Based On  Multiple Violations Committed By The Defendants

23.    The Court proceeded in its Order to foreclose on why the court is without jurisdiction over the entire Complaint. The Plaintiffs filed their Complaint on multiple jurisdictional grounds in a good faith attempt to raise all related substantive violations committed by the Defendants under one umbrella. "*. . . if the joined claims do arise from the same case or controversy, the court may exercise supplemental jurisdiction over the claims*." See *Leham v. Revolution Portfolio LLC*, 166 F.3d 389, 394, (1st Cir. 1999). *". . . Rule 18 permits joinder of any and all claims subject only to objections to jurisdiction and venue . . ."* (*Sinclair v. Soniform*, Inc., 935 F.2d 599 (3d Cir. 1991)).

24.    Unlike the Defendants, the Plaintiffs do not have unlimited time and resources in which to file countless actions in an attempt to remedy all wrongful and malicious acts committed against them by the Defendants; and therefore enjoined their acts under a single cause of action. Furthermore, nowhere does the Federal Judicial Code or the Fed. R. Civ. P. prohibit Plaintiffs from filing this action properly citing multiple jurisdictional grounds wherein the nature of all claims are able to be heard in this court.

25.    In this instant case the Plaintiffs proceed under the jurisdictional provisions stemming from 26 U.S.C. § 7214, *et seq.*, giving rise to an action cognizable under 26 U.S.C. §§ 7433, 7422, 7432, 7429, 2409, and 2410 Title 28 U.S.C. § 1331 – Federal Question; 28 U.S.C. § 1340 – Internal Revenue; 28 U.S.C. § 1346 – United States Defendants; 28 U.S.C. § 1367 – Supplemental Jurisdiction; 28 U.S.C. § 3002(15)(A) – United States Federal Corporation; Title 5 U.S.C. § 702;

All Writs Act at 28 U.S.C. §§ 1651 and 1658; Federal Rules of Civil Procedure §§ 57 and 65; and the broad equitable powers of this Court – properly ceding jurisdiction before this Court.

**VIII.**
**Plaintiffs Foreclosed On The Exhaustion Of Their Administrative**
**Remedies And This Court Has Absolute Subject Matter Jurisdiction**

26.     Favorable to the Defendants, the Court honed in on and singled out the Plaintiffs' § 7433 jurisdictional claim citing _Holt v. Davidson_, 441 F. Supp. 2d 92, 96 (D.D.C. 2006), asserting that the Plaintiffs failed to allege exhaustion of their administrative remedies. To the contrary, filed with the Plaintiffs' Verified Compliant as indicated at Dkt. #3, is a Verified Affidavit And (Forty (40)) Exhibits in Support entered under the Mandatory Judicial Notice on December 12, 2006, fully defining and establishing every element of the full exhaustion (See Declaration and Exhibit A – Filed Copy of "VERIFIED AFFIDAVIT AND EXHIBITS IN SUPPORT OF COMPLAINT).

27.     Without any intent of showing disrespect to this Court, this claim that the Plaintiffs have not gone through the administrative exhaustion means either the Court did not read the Plaintiffs' Complaint or the decision had already been made.  Even if the Plaintiffs had failed to exhaust their administrative remedy, the courts have excused exhaustion when such a requirement "would be futile because of the certainty of an adverse decision." 3 K. Davis, Administrative Law Treatise 20.07 (1958).

28.     The Plaintiffs' attempt to resolve this matter has been absolutely futile.  "***The administrative remedy is inadequate where the agency has expressed a willingness to act, but the relief it will provide through its action will not be sufficient to right the wrong.***" _Randolph-Sheppard_, 795 F.2d at 107 (original emphasis omitted). As cited in _Bivens v. Six Unknown Fed. Narcotics Agents_, 392, 403 U.S. 388 (1971) "***An agent acting — albeit unconstitutionally — in the name of the United States possesses a far greater capacity for harm than an individual***

*trespasser exercising no authority other than their own.*" Cf. <u>Amos</u> v. <u>United States</u>, 255 U.S. 313, 317 (1921); <u>United States v. Classic</u>, 313 U.S. 299, 326 (1941).

29.     The most significant exhibit that proves exhaustion is the Summary Administrative Determination from Appeals Officer PAUL BAKER, dated October 16, 2006, addressing each issue raised by Plaintiffs in their administrative appeal for the return of such property determining without evidence that the seizure and taking of Plaintiffs' personal property was justified – as this determination came as no surprise (see Exhibit C).

30.     During the entire administrative process the Defendants have made their hardline position clear, and are not committed to following any internal revenue laws or procedural requirements, only committed to the seizure and taking of whatever property they believe belongs to Plaintiffs for which they believe they somehow have a superior claim. There is no question that the Defendants have articulated a clear position against the Plaintiffs. *"An adverse decision can also be certain if an agency has articulated a clear position on the issue which it has demonstrated it would be unwilling to reconsider.*" Id. (citing <u>Etelson v. Office of Pers. Mgnt.</u>, 684 F.2d 918, 925 (D.C. Cir. 1982).

31.     The damages suffered by the Plaintiffs are numerous and Constitutional in nature. The Supreme Court stated: "It [U.S. Constitution] must be interpreted in the light of Common Law, the principles and history of which are familiarly known to the framers of the Constitution. The language of the Constitution could not be understood without reference to the Common Law." <u>United States v. Wong Kim Ark</u>, 169 US 649; 18 S.Ct. 456. Contrary to the Defendants' unverified claims, Plaintiffs have stated numerous claims for damages, and are therefore entitled to have their day in court.

## IX.
## Venue Is Proper Before This Court, As The United
## States Exists Wholly In The District Of Columbia

32.     Plaintiffs caused an action to be filed against the United States, which is a federal corporation codified at 28 U.S.C. § 3002(15)(A) – United States Federal Corporation, and a [citizen] located in the District of Columbia. "In the United States of America, there are two (2) separate and distinct jurisdictions, such being the jurisdiction of the states within their state boundaries, and the other being federal jurisdiction (United States), which is limited to the District of Columbia, the U.S. Territories, and federal enclaves within the states, under Article I, Section 8, Clause 17." See *Bevans v. United States*, 16 U.S. 336 (1818). It is a well established principle of law that all federal ". . . legislation applies only within the territorial jurisdiction of the United States unless contrary intent appears." See *Caha v. United States*, 152 U.S. 211, 215, 14 S.Ct. 513 (1894); *American Banana Company v. United Fruit Company*, 213 U.S. 347, 357, 29 S.Ct. 511; *United States v. Spelar*, 338 U.S. 217, 222, 70 S.Ct. 10 (1949).

33.     In the Clearfield Doctrine, as set forth in *Clearfield Trust Co. v. United States*, 318 U.S. 363-371, the Supreme Court ruled: "Governments descend to the level of mere private corporation, and take on the characteristic of a mere private citizen where private corporate commercial paper (Federal Reserve Notes *aka* United States Dollars) and securities is concerned. For purposes of suit, such corporations and individuals are regarded as entities entirely separate from government." *Bank of United States v. Planter's Bank*, 9 Wheaton (22 U.S.) 904, 6 L. Ed. 24. "***The United States government is a foreign corporation with respect to a state.***" *In the Matter of Merriam*, 36 N.E. 505, 141 N.Y. 479, affirmed 16 S.Ct. 1073, 163 U.S. 625, 41 L.Ed 28720 CJS, Section 1785.

34.     Hence, venue is proper in the District of Columbia, the Seat of Government pursuant to 4 U.S.C. §§ 71, 72 and 73; the United States is a Federal corporation pursuant to 28 U.S.C §

3002(15)(A) and a citizen as defined at 28 U.S.C § 1332(c)(1) and (d) maintaining its corporate offices located in the district.

35.     Inasmuch as the venue of this action may be challenged, the Defendants need only file a motion to transfer the case even though the Plaintiffs elected this forum to avoid the judicial prejudice that exists in others. See *Ferens v. John Deer Co.*, 494 U.S., 516, 518-519, 110 S. Ct. 1274, 108 L. Ed. 2d 443 (1990) (Cite Omitted). Finally, it must be noted that, to their knowledge the Plaintiffs do not [r]eside in any statutory judicial district created by an act of Congress, Constitutionally or otherwise.

## X.
## The United States Is The Proper Party
## Under The Administrative Procedure Act

36.     Plaintiffs in the Verified Complaint invoked the tenable jurisdiction of the Administrative Procedure Act. The Administrative Procedure Act ("APA"), however, waives the United States' sovereign immunity for actions brought by [p]ersons suffering a legal wrong at the hands of an agency when those [p]ersons seek relief other than monetary damages. 5 U.S.C. § 702(a). "*Another waiver of sovereign immunity may be found in a statute that creates a federal agency, corporation or other artificial entity, and gives to that entity, the power to sue and be sued.*" See *FDIC v. Meyer*, 510 U.S. 471, 473, 114 S. Ct. 996, 127 L. Ed. 2d 308 (1994). This waiver is applicable to the United States under the APA, see 5 U.S.C. §§ 701-706, and Plaintiffs in this case seek injunctive and declaratory relief. Section 702. Right of review states in pertinent part:

>     "*A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof*. An action in a court of the United States seeking relief other
>
>          than money damages and stating a claim that an agency or an officer or employee

thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the grounds that it is against the United States or that the United States is an indispensable party. ***The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States***: Provided, That any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance."

37.    The Complaint states a claim for relief for Defendants' violations of Plaintiffs' rights under the APA pursuant to the Constitution for the United States of America.  Plaintiffs have alleged that the United States and its named Defendant employees have taken final agency action and that they suffered legal harm as a result thereof. Plaintiffs also seek injunctive and declaratory relief as a result of the violations. This court also has proper jurisdiction over this action because Plaintiffs have satisfied all of the jurisdictional prerequisites and Congress has explicitly waived sovereign immunity for nonmonetary claims of declaratory and injunctive relief.  See <u>Blackmarr v. Guerre</u>, 342 U.S. 512, 515 (1952) (cite omitted). To that end, this Court has jurisdiction over all named Defendants who are indeed federal actors acting on behalf of the United States Defendant.

38.    Unquestionably, this Court has jurisdiction over the United States in this case because Congress has expressly waived sovereign immunity. Justice Ginsburg, in order to demonstrate that 28 U.S.C. §1346(a) clearly waives sovereign immunity, emphasized particular language of the statute: '[t]he district courts shall have original jurisdiction … [of a]ny civil action against the United States for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected… or any sum alleged to have been excessive or ***in any manner***

*wrongfully collected under internal-revenue laws*.' <u>United States v. Williams</u>, 514 U.S. 527, 532

(1995) (quoting §1346(a) (alteration in original)).

39.     As in <u>Williams</u>, sovereign immunity has clearly been waived in this case. The plain

language of § 1346(a) allows Plaintiffs to bring this suit because it is a "civil action against the

United States for the recovery of [an] internal-revenue tax alleged to have been erroneously [and]

illegally assessed [and] collected." 28 U.S.C. § 1346(a). Furthermore, the Court's recognition in

<u>Williams</u> that the language of the statute is broad gives additional support that Congress explicitly

waived sovereign immunity for cases such as the case presently at bar. Because Congress expressly

waived sovereign immunity, Plaintiffs are unquestionably authorized to sue the United States for

the illegal seizure and taking of Plaintiffs' personal property pursuant to § 1346(a).

**XI.**
**<u>The United States Is The Proper Party To</u>**
**<u>Quiet Title To Real And Personal Property</u>**

40.     The Court states at page 2 of its Order: "*. . . to maintain the suit, the plaintiffs must*

*concede the lawfulness of the tax assessment and liabilities.*" (citing <u>Aqua Bar & Lounge, Inc. v.</u>

<u>Department of the Treasury</u>, 539 F.2d 935, 939-940 (3rd Cir. 1976). A thorough read of <u>Aqua Bar</u>

is favorable to the Plaintiffs' filing of their Verified Complaint. In <u>Aqua Bar</u> the court stated at

937, 939 and 940, "We turn first to the question of whether, based on the allegations contained in

the complaint, this suit may be treated as an action to quiet title to property on which the United

States has a lien. We think that this question must be answered in the affirmative . . . Not only are

we unpersuaded by the government's arguments for prohibiting a taxpayer from bringing a

properly limited suit against the United States under § 2410, we also find strong policy reasons for

permitting such an action. The inviolability of private ownership has long been a fundamental

principle of our nation's jurisprudence. See <u>Thatcher v. Powell</u>, 6 Wheat. 119, 125, 5 L.Ed. 221

(1821). In recognition of this principle, Congress has imposed precise strictures on the seizure and sale of an individual's property by the IRS to satisfy legitimate tax deficiencies. These provisions, which the plaintiff contends were not complied with in the instant case, are for the obvious protection of the taxpayer faced with the loss of his property. *Reece v. Scoggins,* 506 F.2d 967, 971 (5th Cir. 1975). Yet, if § 2410 is construed to lift the barrier of sovereign immunity only to actions brought by parties other than *the taxpayer whose property is at stake, the taxpayer would have no available means of enforcing compliance with the procedures enacted for his benefit. In the absence of a Congressional directive to the contrary, we refuse to place such a narrowing construction on § 2410 and thus deprive a taxpayer of any remedy against arbitrary administrative action. We therefore hold that § 2410 constitutes a waiver of sovereign immunity to a suit brought by a taxpayer against the United States which challenges the validity of a federal tax lien and sale* so long as the taxpayer refrains from contesting the merits of the underlying tax assessment itself. The district court thus had jurisdiction to hear this action under that provision in combination with 28 U.S.C. § 1340."

41.     "The quiet-title act waives the federal government's sovereign immunity with respect to suits to determine title to real or personal property on which the United States has or claims a lien." 28 U.S.C. § 2410(a). See *Harrell v. United States*, *13 F.3d 233, 234* (7th Cir. 1993). "A federal suit to clear a federal tax lien is governed by federal law – federal common law if the applicable statutes have gaps." *United States v. Brosnan*, 363 U.S. at 240-42, 80 S.Ct. at 1111-12; *Dupnik v. United States*, 848 F.2d at 1484; *McEndree v. Wilson*, 774 F. Supp. At 1295-96. As the court stated: "All the quiet-title act does is waive sovereign immunity."

42.     Further: "It does not authorize quiet-title suits; it does not confer federal jurisdiction over them; it merely clears away the obstacle that sovereign immunity would otherwise place in the path

of such a suit. _Harrell_ has no problem, however, finding a basis for federal jurisdiction for their quiet-title suit; it is 28 U.S.C. § 1340, which bestows on the federal district courts original jurisdiction of any civil action arising under the internal revenue laws. See _Harrell v. United States_, _13 F.3d 232_ (7th Cir. 1993). As cited in the Plaintiffs' Complaint at page 2, Item I, the jurisdictional requisites are complete, as in this instant case the United States is the proper party, and the authority to file the quiet title action has been established under the internal revenue laws. _Id._

43.     Plaintiffs concede that they are contesting the (procedural validity) merits of the tax assessment, but not under 28 U.S.C. § 2410 as the Court has incorrectly interpreted, but under 5 U.S.C. §§ 701-706 cited supra, as the Plaintiffs well knew that multiple jurisdiction claims were necessary to cede the Court's jurisdiction as ruled in _Murphy v. United States_, 05-5139 (D.C. Cir. 2006)(cited omitted). In doing so, the Plaintiffs correctly cited the Administrative Procedure Act, and named the United States Defendant for such purpose. For that reason the Plaintiffs cited the jurisdictional prerequisites of the Administrative Procedure Act (APA) at 5 U.S.C. §§ 701-706 in the Compl. ¶ at Roman No. 1, seeking declaratory and injunctive relief.

44.     Finally the court concluded in _Aqua Bar_ supra: "Consequently, I would hold that the elaborate and detailed seizure and sale provisions of the Internal Revenue Code, 26 U.S.C. §§ 6331, 6335, of necessity provide an implied waiver of immunity where it is alleged that the Internal Revenue Service (IRS) has failed to comply with these Congressional mandated directives. See _Aqua Bar & Lounge, Inc_ at 940. _Id._

45.     The Court goes on to state: "**_Because the plaintiffs dispute their tax liability in the first instance, Compl. ¶ 36-48, their suit pursuant to § 7433 fails . . ._**" Upon read and review of the Plaintiffs' Compl. at **.** ¶ 8 – 16, Affidavit and Exhibits in Support, there is no question that a

complete exhaustion of the administrative remedies were exercised by Plaintiffs pursuant to 26 U.S.C. § 7433(d)(1) and 26 CFR § 301.7433-1(a),(d), and (e)(2) (see *Bennett v. United States*, 361 F. Supp.2d 510, 514 (W.D. Va. 2005); *Confonte v. United States*, 979 F.2d 1375, 1377 (9th Cir. 1992); *Info. Res., Inc. v. United States*, 950 F.2d 1112, 1125-27 (5th Cir. 1992)) and the appeal officer issued a written Summary Administrative Determination letter taking a position favorable to the Defendants and sustaining their actions. See Dkt #3 dated 12/15/2006 described by the clerk as "ADDITIONAL ATTACHMENT by CLARE L. READING, JAMES L. READING . . ." in essences satisfying all elements necessary to maintain jurisdiction under § 7433.

## CONCLUSION

46.    The Plaintiffs have been forced to proceed reluctantly in this forum because the Defendants have mercilessly continued their destructive behavior and malicious acts and must be "reeled in" as Congress put it when causing passage of the IRS Restructuring and Reform Act of 1998 – an Act attempting to make employees of the Internal Revenue Service accountable for their nonfeasance, misfeasance and malfeasance of office.

47.    Every attempt to administratively compel the Defendants to comply with their own statutes, regulations, and rules have been fruitless and fallen on deaf ears. *Thomas Paine* eloquently espoused: "***It is the madness of folly, to expect mercy from those who have refused to do justice; and even mercy, where conquest is the object, is only a trick of war; the cunning of the fox is as murderous as the violence of the wolf***." – Thomas Paine

48.    The record reflects that Plaintiffs have ceded the Court's subject matter and personal jurisdiction over the United States Defendant, if not all other officers therein named. The record further reflects that the Plaintiffs' Verified Complaint has not been filed in a haphazard manner,

and Plaintiffs have made every effort in good faith to comply with the all rules, particularly Rule 4, no matter their obvious complexity.

**WHEREFORE;** In the interest of justice and considering the entire record, Plaintiffs move this Honorable Court to reconsider its present Order on the grounds stated herein above and cause the present Order of dismissal granted to the Defendants to be withdrawn and/or vacated as the only just and proper remedy.

Respectfully submitted,

## VERIFICATION

I/We, Clare L. Reading and James L. Reading, declare under penalty of perjury pursuant to 28 U.S.C. § 1746(1), that I/we believe the above to be true and correct to the best of my/our knowledge, understanding and belief. All Rights retained without recourse.

On this  7⁵  day of March, 2007

Signature: _Clare Louisi Reading_
Clare L. Reading, Plaintiff
2425 East Fox Street
Mesa, Arizona [85213]

Signature: _James Leslie Reading_
James L. Reading, Plaintiff
2425 East Fox Street
Mesa, Arizona [85213]

James L. Reading and Clare L. Reading
c/o 2425 East Fox Street
Mesa, Arizona [85213]
(480) 964-0199

Affiants, *in Pro Se*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Clare L. Reading and James L. Reading,      ) | Case No. 06-cv-01873-RMU |
| ) | |
| Plaintiffs,      ) | |
| v.      ) | VERIFIED AFFIDAVIT AND EXHIBITS |
| ) | IN SUPPORT OF MOTION FOR |
| UNITED STATES *aka* UNITED STATES      ) | RECONSIDERATION OF ORDER |
| OF AMERICA, a Federal Corporation, ANN      ) | |
| TAYLOR, PAUL CHASE, CINDY MASON      ) | |
| and BOB CAREY,      ) | Mandatory Judicial Notice |
| ) | Fed. R. Evid. 201(d) |
| Defendants.      ) | |

1.   Plaintiffs, Clare L. Reading and James L. Reading (hereinafter referred to as "Affiants") are the pro se litigants in this cause of action and competent to testify that the facts stated herein are true and correct to wit:

2.   That Affiants are not bar association members, are unschooled in law and are attempting to bring this action to the best of Affiants' ability with reliance upon statutes, codes, rules and regulations – including those relied upon by the Defendants.

3.   That Affiants herein submit into evidence Exhibits A through E consisting of 40 pages and **request this Court take mandatory judicial notice of adjudicative facts pursuant to Fed. R. Evid. 201(d)** and deem such Exhibits as admitted.

4.  The Affiants filed their Verified Complaint pursuant to an illegal seizure and taking of personal property on November 1, 2006, and Defendants were duly served with the Summons and Complaint on November 13, 2006.

5.  That prior to bringing this action, Affiants exhausted all administrative remedies to their avail in an attempt to have the personal property illegally seized and taken by the Defendants returned; and such petitioning resulted in the Defendants' determination that their acts were not without law and would therefore be sustained as referenced at Docket #3 – in the Affiants' Verified Affidavit and Exhibits in Support.

6.  That soon thereafter, Affiants received a Summary Administrative Determination from Appeals Officer PAUL BAKER dated October 16, 2006 that addressed each issue raised by Affiants in their administrative appeal for the return of such property – interpreting and determining, without surprise, that the Compliance function was justified in illegally seizing and stealing personal property in Affiants' possession and control (see **Exhibit A** – Summary Determination extracted from Docket #3 Exhibits).

7.  On November 27, 2006, the Court entered a docket entry giving the Defendants 60 days or until January 12, 2007 to answer the Affiants' Verified Compliant (see Docket #2 on **Exhibit B**).

8.  That Affiants caused proper Service of Process to effectuate by serving the Civil Process Clerk and the United States Postal Service, third parties who then served the United States Defendant via Fed. R. Civ.P. Rule 4(i)(1)(A) and 4(i)(2)(A), sending a copy of the summons and complaint by certified mail addressed to the civil process clerk at the office of the United States attorney, the Attorney General of the United States at Washington, District of Columbia (see Docket#3 on **Exhibit B**).

9. The Defendants failed to answer the Verified Complaint within 60 days pursuant to the Federal Rules of Civil Procedure, which caused the Affiants to file a Motion and Affidavit for Entry of Default, filed and served on the Defendants on February 9, 2007 (as indicated at Docket #5 on **Exhibit B**).

10. In response, the Clerk of this Court entered a Default against Defendants on February 16, 2007, the same day the Defendants filed their response to Affiants' compliant (see Docket #6 and **Exhibit C**) and 34 days beyond the time to answer or defend, moving the court dismiss for lack of jurisdiction on various grounds.

11. The Affiants having received an entry of default by the Clerk of the Court against the Defendants, did not answer the Defendants' motion to dismiss because Affiants relied on LcvR 7(b), Fed. R. Civ. P. 6(a); that the Default must first be cured before the motion to dismiss can effectively cede the court's jurisdiction – making the motion to dismiss moot.

12. The motion to vacate the entry of default was filed by the Defendants on February 22, 2007 [Dkt#8], for which the Affiants were never given an opportunity to respond as accorded by LcvR 7(b), Fed. R. Civ. P. 6(a); and deprived Affiants of the due process right to respond to the motion.

13. That Affiants are *pro se* litigants and never received a Strickland Order from the court giving Affiants an opportunity to cure any oversight that might exist prior to the Court granting the Defendants' motion to dismiss and have therefore been prejudiced (see **Exhibit D-** Copy of Strickland Order issued on February 7, 2007 In Re *Patrick Lee Bohall v. United States* Case # 1:06-cv-01482-HHK by The Honorable Henry H. Kennedy, Jr.).

14. That Affiants' failure to respond to the Defendants' motion to dismiss is an inadvertent mistake, as Affiants were of the belief that the entry of default by the Clerk of the Court resulted in

the statutory requirement of Defendants to cure the Default with a motion to the Court prior to any action being taken on their untimely motion to dismiss.

15. That on or about February 20, 2007, Affiants were contacted by Defendants who informed Affiants that they would be proceeding with the sale of their property on March 9, 2007, even though Affiants have filed a quiet title and lis pendens in an effort to restrain the sale and dispute the procedural validity of their actions; and Affiants fully documented their acts via Affidavit (see **Exhibit E**).

16. That upon notice of the Defendants' disregard for the quiet title and lis pendens, on or about February 26, 2007, Affiants immediately moved for a preliminary injunction and restraining order as indicated at Docket numbers 9 and 10, seeking to restrain the Defendants from disposing of Affiants' personal property until such time all matters pending litigation have been resolved by the court, as commanded pursuant to the internal revenue laws at 26 U.S.C. § 7403(c) of the United States Code.

17. That Affiants have been browbeaten by the Defendants' lack of professionalism, integrity and honesty – carrying on like spoiled children that know even when they break the law and openly commit crimes against Affiants, their parents, the Court in this instant case, will protect them from being made accountable for their egregious and malicious acts – often endorsing and/or excusing the same.

18. That Affiants have at every turn come before this Court in good faith, and have properly petitioned this Court to hear the matter, and there is no evidence the Defendants have been prejudiced by Affiants in any manner; wherein upon a thorough review of the Verified Complaint, Affiants have established the Court's has jurisdiction.

19. That Affiants have filed this Motion for Reconsideration supported with evidence upon the belief that the Court is authorized by law to be a nonbiased arbitrator (irrespective of the fact that the Court's United States employer is a party Defendant) – not complacent and.arrogant – and empowered to do that which is just, and correct an error of law that clearly exists on the Court's record and allow Affiants equal access to the law.

## VERIFICATION

I/we, James L. Reading and Clare L. Reading, declare under penalty of perjury and the United States of (North) America as Conscious, Thinking, Feeling, Living, Breathing, Flesh and Blood Sentient Beings that the foregoing is true, correct and not meant to mislead. All Rights retained without recourse.

On this 7th day of March 2007.

Signature: James Leslie Reading
James L. Reading, Affiant

Signature: Clare Louise Reading
Clare L. Reading, Affiant

## NOTARY ACKNOWLEDGMENT

State of Arizona )
) subscribed and sworn
County of Maricopa )

On this 7 day, of March , 2007 James L. Reading and Clare L. Reading personally appeared, personally known to me, or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to within this instrument.

Witness my hand and official seal.

Signature of Notary

My Commission Expires: Feb. 14, 2010

OFFICIAL SEAL
LINDSAY CONNER
NOTARY PUBLIC-ARIZONA
MARICOPA COUNTY
My Commission Expires February 14, 2010

VERIFIED AFFIDAVIT AND EXHIBITS IN SUPPORT
OF MOTION FOR RECONSIDERATION OF ORDER

- 5 -

James L Reading and Clare L Readings, Affiants
Notary: page 5, Exhibits: 12 pages

**ATTACHMENTS:**

**Exhibit A**: Copy Of Summary Determination Dated October 16, 2007 Signed By Mary N. Brown, Appeals Team Manager

**Exhibit B**: Copy Of USDC, District of Columbia Court Docket Reading v. United States Case 1:06-cv-01873-RMU Indicating Eleven Entries

**Exhibit C**: Copy of Entry of Default By Deputy Clerk, Jackie Francis, In Re Reading v. United States Case 1:06-cv-01873

**Exhibit D**: Copy Of Strickland Order Issued On February 7, 2007 In Re Patrick Lee Bohall v. United States Case # 1:06-cv-01482-HHK By The Honorable Henry H. Kennedy, Jr.

**Exhibit E**: Copy Notice of Public Auction Sale Pending Friday March 9, 2007 at the IRS office, issued by STEVEN MASSELL And Form 4585 – Minimum Bid Worksheet And Readings' Affidavit Of Events In Response To Renewed Public Action Sale Pending Friday March 9, 2007

## CERTIFICATE OF SERVICE

I, Clare L. Reading, certify that on this $7^{\underline{yh}}$ day of March, 2007 I mailed a true copy of the

above "Plaintiffs' Motion for Reconsideration And Withdrawal Of Order" and "Verified Affidavit

And Exhibit In support Of Motion for Reconsideration Of Order" by First Class Mail addressed to

Pat S. Genis, #446244
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 227
Washington, DC 20044

Signature: *Clare Louise Reading*
Clare L. Reading, Affiant